UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BATTENSBY,<br><br>                         Plaintiff,<br>v.<br><br>DR. R. ZHANG and<br>NURSE M. SOUSLEY,<br><br>                        Defendants. | Case No.: 20cv0001 TWR (MDD)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

Plaintiff David Battensby is a state prisoner proceeding pro se and in forma pauperis with a First Amended Complaint ("FAC") pursuant to 42 U.S.C. § 1983. (ECF No. 6.) He claims that while housed at the R. J. Donovan Correctional Facility ("RJD") in San Diego, California, Defendants Dr. Zhang and Nurse Sousley were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment by failing to provide adequate pain relief medication following back surgery. (*Id*. at 3–9.)

Currently pending is a Motion for Summary Judgment by Defendants Dr. Zhang and Nurse Sousley. (ECF No. 18.) Defendants contend there is no genuine issue of material fact in dispute, that Plaintiff was provided proper medical care, and that they are entitled to qualified immunity. (*Id*. at 6–20.) Plaintiff has not filed an Opposition.

As set forth herein, the Court **GRANTS** summary judgment in favor of Defendants on the basis there is no genuine issue of material fact in dispute that either Defendant was deliberately indifferent to Plaintiff's serious medical needs. The Court does not reach Defendants' contention they are entitled to qualified immunity.[1]

## I.    Procedural Background

Plaintiff initiated this action by filing a Complaint on January 2, 2020, claiming that after his back surgery in May 2018, his pain was successfully managed with prescriptions for morphine and Lyrica, but that Defendant RJD physician Dr. Zhang discontinued his morphine prescription in January 2019 because no morphine was detected in his system and because Plaintiff was "bothering" Dr. Zhang with complaints of back pain. (ECF No. 1 at 3.) Plaintiff claimed Dr. Zhang refused to reinstate the morphine prescription after its discontinuation resulted in extreme pain, and that Defendants RJD Nurse Sousley, RJD Chief Medical Officer Roberts, and RJD Chief of Health Care Appeals Gates were aware through the inmate grievance procedure of Dr. Zhang's actions but failed to reverse his decision. (*Id*. at 3–5.)

On January 28, 2020, the Court granted Plaintiff leave to proceed in forma pauperis and screened the Complaint pursuant to the provisions of 28 U.S.C. §§ 1915(e)(2) & 1915A(b). (ECF No. 5.) Those statutes provide the Court must sua sponte dismiss a prisoner's in forma pauperis complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). The Court found the allegations against Dr. Zhang survived screening with respect to an Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical needs but dismissed the claims against the remaining

---

[1] Although this motion was referred to United States Magistrate Judge Mitchell D. Dembin pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and Recommendation nor oral argument is necessary for the disposition of this matter. *See* S.D. Cal. Civ.L.R. 72.1(d).

Defendants on the basis that merely participating in processing inmate grievances is insufficient to state a § 1983 claim and the Complaint did not plausibly allege they personally participated in the alleged Eighth Amendment violation.  (ECF No. 5 at 7–8.) Plaintiff was provided the choice of proceeding with his claim against Dr. Zhang or amending his Complaint with respect to the other Defendants.  (*Id*. at 8–9.)

On March 16, 2020, Plaintiff filed the FAC, the operative pleading in this action, presenting the same claims against the same Defendants.  (ECF No. 6.)  On May 22, 2020, the Court screened the FAC, found it survived screening as to the Eighth Amendment claims against Dr. Zhang and Nurse Sousley but not as to Roberts and Gates, dismissed the claims against Roberts and Gates without further leave to amend, and directed the United States Marshal to effect service of the summons and FAC on Defendants Dr. Zhang and Nurse Sousley.  (ECF No. 7 at 7–12.)

Defendants Dr. Zhang and Nurse Sousley filed an Answer to the FAC on October 16, 2020.  (ECF No. 10.)  They filed the instant Motion for Summary Judgment on July 16, 2021.  (ECF No. 18.)  Plaintiff has not filed an Opposition.

## II.     Plaintiff's Allegations

Plaintiff alleges that after back surgery on May 21, 2018, which "basically didn't work [and] left me in a wheelchair," he was in severe pain and prescribed two pain medications, morphine and Lyrica.  (ECF No. 6 at 3.)  Although he was in moderate pain even while taking these medications his pain was managed sufficiently for him to sleep and eat normally.  (*Id*.)  On January 17, 2019, Defendant RJD Dr. Ronald Zhang told Plaintiff he was discontinuing the morphine prescription "because (1) there was no morphine detected on my urine test [and] (2) because I keep on bothering him with my back pain not going away."  (*Id*.)

Plaintiff contends that the first reason Dr. Zhang cited, the negative urine test, is untrue.  (*Id*. at 5.)  According to Plaintiff, his urine tested positive for morphine shortly before his prescription was discontinued, yet Dr. Zhang stated that another test, which Plaintiff was not allowed to see, was negative.  (*Id*.)  Plaintiff asserts that Dr. Zhang lied

about the results of this second test "to justify discontinuing a known effective medication." (*Id*. at 6.)  Plaintiff also notes that decisions on his subsequent administrative grievances do not mention any negative test, which he argues bolsters his claim Dr. Zhang lied.  (*Id*.) He further contends that even if he did test negative, the result has an innocent explanation, either he was tested on a day he forgot to take a dose or he did not receive a full dose due to the way medication is distributed in the prison.  (*Id*.)  Regardless, Plaintiff alleges it is improper for a doctor to discontinue a medication as a "disciplinary action" for testing negative without substituting "another similar[ly] potent pain medication."  (*Id*.)

Plaintiff states that after Dr. Zhang discontinued the prescription, his pain quickly escalated, consistently reaching 9/10 or 10/10 in intensity.  (*Id*. at 3.)  The pain became so severe he did not feel hungry and often felt ill when he ate.  (*Id*.)  He alleges the pain interfered with his breathing and prevented him from sleeping, which in turn increased his anxiety and gave him panic attacks and suicidal thoughts.  (*Id*. at 3-4.)  As a result, he asked to see Dr. Zhang again, and "basically told him that [his] pain is in a level 10 constantly, which [is] intentionally inflicting pain on" him.  (*Id*. at 3.)  Nevertheless, Dr. Zhang refused Plaintiff's requests to renew his morphine prescription and "his response was that he didn't care about my pain."  (*Id*.)  Plaintiff claims his allegations amount to more than a mere difference of opinion between himself and Dr. Zhang regarding the best course of treatment, and states that his demand was to either reinstate his morphine prescription or for something "as effective as morphine," as: "I was open to any type of pain medication Dr. Zhang will be willing to give me.  All I wanted was for an effective course of treatment."  (*Id*. at 3–5.)

On January 21, 2019, Plaintiff submitted an administrative grievance challenging Dr. Zhang's decision.  (*Id*. at 7.)  As part of the grievance procedure, Plaintiff was interviewed by Defendant Nurse Sousley on March 11, 2019.  (*Id*.)  Plaintiff told Nurse Sousley he was in serious pain since his morphine prescription was discontinued and the pain interfered with his sleep and breathing, caused anxiety and panic attacks, and led to suicidal thoughts.  (*Id*.)  Nurse Sousley allegedly told Plaintiff "that even if I came in with

a broken arm complaining that [a] doctor put me on [an] ineffective course of treatment, Sousley cant [sic] do nothing." (*Id.*)  Plaintiff states that: "I told Sousley that as a Health Care RN [she] cannot leave me in such a condition [and] can recommend emergency or urgent intervention so another doctor or someone that can modify [my] course of treatment to intervene," but Nurse Sousley responded "[she] could but wasn't going to, and for me to suffer till I [was] seen next time [by] Dr. Zhang and see what he says." (*Id.*)  After their conversation, Nurse Sousley filed a report which resulted in the denial of Plaintiff's grievance. (*Id.*)  Plaintiff claims Nurse Sousley was deliberately indifferent to his medical needs because she: (1) personally observed Plaintiff's condition during the interview and failed to intervene to address his medical needs; (2) delayed interviewing Plaintiff regarding the grievance for five weeks after the grievance was filed; and (3) omitted from her decision the allegations set forth in the FAC against Dr. Zhang which they discussed at their interview which would have resulted in his grievance being granted. (*Id.* at 7–8.)

### III. Legal Standards

A defendant is entitled to summary judgment if he or she demonstrates "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the initial burden of "showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

In order to avoid summary judgment, Plaintiff "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The Court may not weigh evidence or make credibility determinations, and all legitimate inferences drawn from the facts are viewed in the light most favorable to the plaintiff who "need only present evidence from which a jury might return a verdict in his favor." *Id.* at 255, 257.

The Eighth Amendment's cruel and unusual punishments clause is violated when prison officials are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 102-05 (1976). To establish deliberate indifference, a prisoner must point to evidence in the record from which a trier of fact might reasonably conclude that the treatment he received placed him at risk of "objectively, sufficiently serious" harm, and that a prison official had a "sufficiently culpable state of mind" when they provided or denied medical care. *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995).

Plaintiff must show Defendants knew of and disregarded "an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Inadequate medical treatment, medical malpractice, or even gross negligence by itself does not rise to that level. *Jett v. Palmer*, 439 F.3d 1091, 1096 (9th Cir. 2006). Rather, "the Eighth Amendment proscribes 'the unnecessary and wanton infliction of pain,' which includes those sanctions that are 'so totally without penological justification that it results in the gratuitous infliction of suffering.'" *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982), overruled on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995), quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

Prison officials may be deliberately indifferent to a prisoner's serious medical needs if they "deny, delay or intentionally interfere with medical treatment." *Hunt v. Dental Dep't.*, 865 F.2d 198, 201 (9th Cir. 1989). However, "to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment was medically unacceptable under the circumstances, and was chosen in conscious disregard of an excessive risk to (the prisoner's) health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (internal quote marks omitted).

**IV.   Defendants are entitled to summary judgment**

Defendants present declarations in support of their summary judgment motion from Defendant Dr. Zhang, Defendant Nurse Sousley and Deputy Attorney General Matthew

Wolfe. (ECF Nos. 18-1, 18-2 and 18-3.) Dr. Zhang states that he has been employed at RJD as a physician and surgeon since June 2014, that he was the primary care physician for Plaintiff from June 2017 through August 2019, and in that role he had primary responsibility for Plaintiff's health care, including pain management treatment. (ECF No. 18-1 at 1–2.) He states that the California Correctional Health Care Services ("CCHCS") has published guidelines for the use of opioids for pain management in California prisons, a copy of which is attached to his declaration as Exhibit 1, which he relies on in combination with his training and experience when prescribing and managing opioids for inmates, including Plaintiff. (*Id*. at 2.) Those guidelines express disfavor of the use of opiates in treatment of chronic non-cancer pain and recommend discontinuation where the benefits outweigh the risks or where past substance abuse, suspected substance abuse or diversion are present. (*Id*. at 2–3.)

On January 10, 2018, Dr. Zhang saw Plaintiff for a follow-up on his neurosurgery consultation with Dr. Yoo and discussed with Plaintiff Dr. Yoo's recommendation for L5-S1 fusion surgery. (*Id*. at 3.) Plaintiff indicated he would like to proceed with the surgery and Dr. Zhang submitted a Request for Services that same day to have Plaintiff scheduled for surgery. (*Id*.) Attached as Exhibits 2-15 to his declaration are his progress notes for that and their remaining consultations described below. (*Id*. at 43–97.) Dr. Zhang saw Plaintiff on March 27, 2018, in response to Plaintiff's complaint that Lyrica, the brand name for pregabalin, that he was taking to treat his lower back pain was not effective. (*Id*.) Based on Plaintiff's diagnosis of spinal stenosis and his pending referral for back surgery, Dr. Zhang started Plaintiff on a trial course of morphine ER (extended release), 15 mg twice per day, and discussed with Plaintiff the risks of abuse, overdose and addiction associated with morphine. (*Id*.)

During a pain management follow-up consultation on April 26, 2018, Dr. Zhang confronted Plaintiff with an incident where he was suspected of "cheeking" his morphine pill, that is, attempting to hold the pill in his mouth rather than swallowing it when administered. (*Id*.) Plaintiff denied cheeking the pill and said his lips were dry, and Dr.

Zhang ordered a drug screen to determine if Plaintiff was compliant with his morphine prescription. (*Id.*) On May 8, 2018, Dr. Zhang discussed the result of the drug screen with Plaintiff, which was negative for opioids and raised a concern with Dr. Zhang that Plaintiff was diverting his medication. (*Id.*) Dr. Zhang ordered an additional drug screen and tapered Plaintiff's prescription from morphine ER 15 mg twice per day to morphine IR (immediate release) 15 mg once per day, because morphine IR is less susceptible to abuse and diversion. (*Id.* at 3–4.)

Dr. Zhang saw Plaintiff on June 4, 2018, for a follow-up examination following back surgery. (*Id.* at 4.) Plaintiff's medication had been increased following surgery to morphine ER 30 mg twice per day. (*Id.*) Dr. Zhang tapered down the morphine by reducing the prescription to one morphine ER 30 mg at bedtime and one morphine ER 15 mg in the morning, intending to eventually taper Plaintiff off morphine entirely and transition to non-opioid pain medications due to the risks of dependence and abuse associated with long-term opioid use. (*Id.*) He advised Plaintiff on stretching, massaging, meditation, and relaxation to control his pain and ordered physical therapy. (*Id.*)

On June 11, 2018, Dr. Zhang saw Plaintiff for a follow-up examination and noted he would keep him at his present morphine dosage and continue tapering at their next appointment. (*Id.*) On June 28, 2018, during a follow-up examination, Dr. Zhang again discussed the risk of opioid abuse with Plaintiff and continued tapering by reducing his dosage to two morphine ER 15 mg per day, once in the morning and once at bedtime. (*Id.*) During an August 1, 2018, follow-up examination, Dr. Zhang noted that Plaintiff appeared comfortable but complained of significant pain throughout the day and requested to remain on the same morphine dose of ER 15 mg twice per day. (*Id.*) Dr. Zhang discussed the risks again and did not change the dosage at that time. (*Id.* at 4-5.)

Dr. Zhang states that he saw Plaintiff for nine additional medical appointments between August 1, 2018, and January 14, 2019. (*Id.* at 5.) At each of those appointments he reviewed Plaintiff's chronic back pain, prescribed medications and ordered tests, but did not change Plaintiff's prescription for morphine ER 15 mg twice per day. (*Id.*)

On January 14, 2019, Dr. Zhang saw Plaintiff for a chronic care appointment at which Plaintiff stated that his chronic back pain had increased over the past few weeks. (*Id*.) Dr. Zhang arranged for Plaintiff to be evaluated at Tri-City Hospital. (*Id*.) He saw Plaintiff on January 17, 2019, as a follow-up after the Tri-City Hospital visit and noted that the hospital notes indicated that tests did not reveal any physical cause of Plaintiff's reported increase in pain. (*Id*.) Dr. Zhang noted that a January 8, 2019, blood serum drug screen was negative for opioids. (*Id*.) He states that while a urine screen at that time was positive for opioids, based on his training and experience a blood serum drug screen is more accurate than a urine screen due to less susceptibility of contamination, and he considered the negative blood serum drug screen suspicious of opioid diversion, which presented a risk to Plaintiff and other inmates. (*Id*.) Dr. Zhang determined at that time that Plaintiff's morphine prescription should be discontinued and his pain management treatment shifted to non-opioid alternatives. (*Id*.) He left Plaintiff on his Lyrica prescription and added a prescription for Tylenol 650 mg twice per day, referred Plaintiff for an urgent mental health evaluation, and instructed Plaintiff to see him for a follow-up in 3-4 weeks or earlier if necessary. (*Id*.) Dr. Zhang states that:

> My decision to discontinue Mr. Battensby's morphine and to treat his pain with non-opioid alternatives was consistent with my long-term plan to taper him off of morphine once his post-surgical back pain was stable. Based on the CCHCS guidelines, and my training and experience as a physician, opioids such as morphine are not appropriate for indefinite treatment of Mr. Battensby's chronic pain due to the risk of overdose, abuse, and dependence. Mr. Battensby was, in January 2019, more than seven months post-surgery, and I had tapered his dosage through two prior reductions. It would have been possible to taper his prescription one more time to morphine ER 15 mg once per day (the lowest dosage available in the formulary), but further tapering was unnecessary because there was already no morphine in Mr. Battensby's system. Mr. Battensby displayed improvement in his mobility throughout his recovery, and based on evaluations by Tri-City Hospital, the surgery was successful, Mr. Battensby's back was healing appropriately, and there was no objective indication of any complication to Mr. Battensby's recovery. Throughout my personal interactions with Mr. Battensby, I never observed him exhibiting outward signs that he was experiencing severe or intractable

pain. Consistent with the long-term plan to taper Mr. Battensby off morphine completely, the timing was therefore appropriate to discontinue morphine. My concerns of diversion arising from the negative serum test and Mr. Battensby's opioid-seeking behavior reinforced by decision to transition Mr. Battensby to non-opioid pain medications. [¶] My goal in deciding to end Mr. Battensby's morphine treatment was to improve his personal health and well-being, and to avoid the serious risks associated with long-term opioid use, which were particularly acute with Mr. Battensby due to his history of narcotics abuse. The decision was not motivated in any way by ill-will or animus toward Mr. Battensby, and I certainly never told him that I did not care about his chronic pain or that I was ending morphine treatment because Mr. Battensby was "bothering" me.

(*Id*. at 6–7.)

Dr. Zhang saw Plaintiff for follow-up appointments on February 6, March 4, April 22, May 13, July 12, and August 29, 2019. (*Id*. at 7.) At each appointment he reviewed and treated multiple medical issues and referred Plaintiff to outside providers, including to his neurosurgeon for further evaluation of the underlying cause of his back pain, and at each appointment maintained the prescriptions for Lyrica and Tylenol. (*Id*.) In mid-March 2019, Dr. Zhang changed Plaintiff's Lyrica prescription from morning and afternoon to morning and bedtime in response to a recommendation from Nurse Sousley. (*Id*.)

Defendant Nurse Sousley states in her declaration that she became a Registered Nurse in July 2018 and began working for the California Department of Corrections and Rehabilitation at RJD as a "float nurse" and as a backup Health Care Appeals Registered Nurse ("HCARN") in January 2019. (ECF No. 18-2 at 1–2.) The duties of a HCARN include conducting clinical reviews of health care grievances submitted by inmates, which entails reviewing the inmate's medical records and offering the inmate the option of an interview. (*Id*. at 2.) The HCARN prepares a summary of their review which may include recommendations for intervention, including such actions as contacting the primary care provider for further discussion, getting a second opinion, or rescheduling appointments for an earlier date. (*Id*.) "The HCARN submits their summary to the Institution Grievance

Office for final review and preparation of an Institution Level response to the grievance." (*Id*.) "The HCARN does not deny or approve inmate grievances, but only makes recommendations as to interventions." (*Id*.)

Nurse Sousley states that on March 2019, while she was undergoing HCARN orientation, Plaintiff's inmate grievance appeal was assigned to HCARN Barrett, who asked her to assist with the chart review and conduct an interview with Plaintiff under Barrett's supervision as part of Nurse Sousley's training. (*Id*.) Nurse Sousley reviewed Plaintiff's January 21, 2019, Health Care Appeal 602 HC along with his medical records, and along with HCARN Barrett completed a Clinical Review Worksheet. (*Id*.) A copy of the Worksheet is attached as an exhibit to her declaration. (*Id*. at 6–7.) Plaintiff accepted an offer for an interview and Nurse Sousley interviewed him on March 11, 2019, in the presence of HCARN Barrett. (*Id*. at 2.) Nurse Sousley provided Plaintiff an opportunity to explain his complaint, discussed with him that morphine is not beneficial as a chronic pain medication, and that the Lyrica and Tylenol he was prescribed were preferable, and educated him on exercises to relieve pressure on his lower back. (*Id*.) Plaintiff informed Nurse Sousley that his pain was worse at night, so they discussed changing his Lyrica dosage from morning and afternoon to morning and bedtime to provide better pain management through the night. (*Id*. at 2–3.) After the interview Nurse Sousley prepared an interview note that was entered in Plaintiff's medical chart for the grievance office to review prior to responding to the grievance. (*Id*. at 3.) A copy of the note is attached as an exhibit to her declaration. (*Id*. at 9–10.) Nurse Sousley then discussed with Dr. Zhang changing Plaintiff's afternoon dose of Lyrica to bedtime and was advised by Dr. Zhang that he would review Plaintiff's chart and evaluate. (*Id*. at 3.) She states that:

> Based on my training and experience, Dr. Zhang's decision to discontinue Mr. Battensby's morphine on January 21, 2019 was medically appropriate. Morphine is not recommended for long-term use to treat chronic pain due to the risks of dependence, abuse, and overdose. By January 2019, all objective evidence showed that his surgery was successful and healing properly, which a further appointment with Mr. Battensby's neurologist on February 19, 2019, confirmed. Mr. Battensby was appropriately placed on

> alternative pain medications Lyrica and Tylenol. Mr. Battensby's admission on March 4, 2019, that he was using heroin reinforced that morphine was inappropriate. [¶] Additionally, Mr. Battensby had a blood serum drug screen on January 8, 2019, that was negative for opiates. Medication administration records showed that he received his two prior doses of morphine on the evening of January 7, 2019, and in the morning of January 8, 2019. This inconsistent drug screen and observations of suspicious drug-seeking behavior raised serious concern that Mr. Battensby was diverting his morphine. [¶] Dr. Zhang's decision to discontinue Mr. Battensby's morphine was consistent with the guidelines by [CCHCS] regarding the use of opioids for pain management. Those guidelines discourage the use of opioids for treatment of chronic pain in most patients and recommend discontinuing morphine in cases of suspected diversion and for patients using narcotics, including heroin. [¶] I found that no intervention was necessary in Mr. Battensby's case for the reasons stated above. I made this determination because I believed that, under the circumstances, the risks of continued morphine treatment outweighed any potential benefits, and that it was therefore in Mr. Battenby's own best interests to end his morphine treatment. My determination was not based on any ill-will or malice toward Mr. Battensby.

(*Id*. at 3–4.)

Finally, Defendants present the declaration of Edward Wolfe, the Deputy Attorney General representing Defendants in this action, who attaches and authenticates copies of Plaintiff's medical records and excerpts from his April 12, 2021, deposition. (ECF No. 18-3.) Defendants argue that the medical records show that after Dr. Zhang discontinued Plaintiff's morphine prescription in January 2019, Plaintiff made numerous requests to multiple doctors at RJD for morphine who declined to provide him morphine. (ECF No. 18 at 11.) These requests and refusals occurred on January 22, 2019, with Dr. Erika Goyal, on October 17, 2019, with Dr. Tri Luu, on January 22, 2020, with Dr. Gina Casian, on June 15, 2020, with Dr. David Guldseth, and on July 2, 2020, with Dr. Michael Santos, who noted he was suspicious regarding Plaintiff's "drug seeking behavior." (*Id*. at 11–12; ECF No. 18-3 at 33–44.) Plaintiff's medical records indicate a history of intravenous drug use from ages 15 to 38 involving heroin, cocaine and methamphetamine. (ECF No. 18-1 at 43.)

/ / /

### 1. Defendants have carried their burden of showing an absence of a genuine issue of material fact in dispute

As detailed above, evidence shows that when Dr. Zhang began to taper Plaintiff off morphine and he reported an increase in pain, Dr. Zhang referred Plaintiff to his neurosurgeon at an outside hospital for further evaluation of the underlying cause of his back pain, where hospital tests did not reveal any physical cause of his reported increase in pain, and that same process was repeated after Plaintiff was taken completely off morphine. However, a blood serum drug screen taken a week before the first hospital referral was negative for opioids, the second time Plaintiff had tested negative for opioids while prescribed morphine, evidence that the increase in pain was due to Plaintiff not taking his prescribed morphine. Dr. Zhang was concerned with the possibility of diversion, which was further supported by the prior "cheeking" incident and suspicious drug-seeking behavior noted by Dr. Zhang and Dr. Santos. In addition, CCHCS guidelines and Dr. Zhang's own training and experience led him to believe that opioids are inappropriate for long-term, non-cancer pain management, particularly with respect to someone with a lengthy history of heroin abuse like Plaintiff. Thus, evidence has been presented that the cause of Plaintiff's report of increased pain in January 2019 was due to diversion of his prescribed morphine, that he was prescribed an alternative non-opioid course of pain medication based on Dr. Zhang's professional medical judgment, and that six other doctors thereafter refused Plaintiff's requests to be put back on morphine.

With respect to Nurse Sousley, the evidence presented shows she reviewed Plaintiff's medical records and interviewed Plaintiff in connection to his health care grievance while in training as an HCARN while supervised by HCARN Barrett. In that connection, Nurse Sousley, in response to Plaintiff's report of having trouble sleeping as a result of back pain, and based on her training and experience, recommended to Dr. Zhang to move Plaintiff's afternoon dose of Lyrica to a bedtime dose and educated Plaintiff regarding stretches to relieve his back pain.

/ / /

Defendants have satisfied their initial burden of showing "the absence of a genuine issue as to any material fact" that they disregarded "an excessive risk to inmate health or safety," or were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and actually drew such an inference but disregarded the risk "by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 837.  In order to avoid summary judgment Plaintiff must now come forward with "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.  He must make "a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322.  To establish deliberate indifference, Plaintiff must show "a purposeful act or failure to respond to [his] pain or possible medical need." *Jett*, 439 F.3d at 1096.  He must also show that the course of treatment Dr. Zhang chose was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to his health. *Toguchi*, 391 F.3d at 1058; *Estelle*, 429 U.S. at 104 (noting that a serious medical need exists where a failure to treat a prisoner's condition amounts to "the unnecessary and wanton infliction of pain.")  The Court may not weigh evidence or make credibility determinations, and any legitimate inferences to be drawn from the facts must be viewed in the light most favorable to Plaintiff. *Anderson*, 477 U.S. at 255.

### 2. Plaintiff has not carried his burden of identifying specific facts showing a genuine issue of material fact for trial

Plaintiff alleges in the FAC that Dr. Zhang told him in January 2019 he was discontinuing his morphine prescription for two reasons, that there was no morphine detected in his system in a test Plaintiff was not allowed to see and because Plaintiff kept "bothering [Dr. Zhang] with my back pain not going away." (ECF No. 6 at 3–5.)  He asserts Dr. Zhang lied about the test results "to justify discontinuing a known effective medication." (*Id*. at 6.)  However, a copy of the negative test is in the record as Exhibit 11 to Dr. Zhang's declaration. (ECF No. 18-1 at 74–75.)  Plaintiff alternately contends that if the test was negative for opioids, it was because he was tested on a day he forgot to take a dose or he did not receive a full dose due to the manner in which medication is dispensed

at the prison, as "there have been times when Transport have came [sic] and took me out and me not get my meds do [sic] to either to [sic] late or to [sic] early to get my Meds." (ECF No. 6 at 6, 26.)  He alleges it is improper for a doctor to discontinue a medication as a "disciplinary action" for testing negative without substituting "another similar[ly] potent pain medication." (*Id*. at 6.)

For the following reasons it is clear that the allegations in the FAC do not adequately contradict Dr. Zhang's evidence that Plaintiff was tapered off morphine for medical reasons, including suspected diversion of morphine as presenting a danger to himself and other inmates rather than as a disciplinary action or for personal reasons, or that Plaintiff was provided with medically appropriate non-opioid pain medication. *See Anderson*, 477 U.S. at 248 ("[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.") (internal quote marks omitted).  A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party," and an issue of fact is "material" if it "might affect the outcome of the suit under governing law." *Id*. at 242, 248.

Plaintiff alleges that when he saw Dr. Zhang after the discontinuation of morphine and informed him his pain was unbearable, Dr. Zhang refused his request to renew his morphine prescription and allegedly responded "that he didn't care about my pain." (ECF No. 6 at 3.)  Plaintiff states his demand was not necessarily for the reinstatement of his morphine prescription, but that he was open "to any type of pain medication Dr. Zhang will be willing to give me.  All I wanted was for an effective course of treatment." (*Id*. at 5.) The allegations in the FAC does not constitute evidence Dr. Zhang was deliberately indifferent to his need for effective pain medication for several reasons.  First, because the FAC is not signed under penalty of perjury, even to the extent the allegations contained therein are within Plaintiff's personal knowledge, such as the level of his pain or the effectiveness of the non-opioid medication, they do not constitute evidence in opposition to the summary judgment motion.  *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004)

("[B]ecause Jones is pro se, we must consider as evidence in his opposition to summary judgment all of Jones's contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where Jones attested under penalty of perjury that the contents of the motions or pleadings are true and correct."); *Southern California Darts Ass'n v. Zaffina*, 762 F.3d 921, 925-26 (9th Cir. 2014) ("Evidence may be offered to support or dispute a fact on summary judgment only if it could be presented in an admissible form at trial.") (internal quote marks omitted).

Second, even were the Court to provide Plaintiff the opportunity to verify his FAC, the evidence in the record shows that Dr. Zhang started Plaintiff on morphine in March 2018 prior to surgery and did not end the morphine prescription until January 2019, over seven months after surgery in response to Plaintiff's negative blood serum test and to avoid the effects of long-term opioid use. Dr. Zhang twice referred Plaintiff to his neurosurgeon at an outside hospital for further evaluation of the underlying cause of his back pain in response to his report of increased back pain, once during the tapering process and once after discontinuation of morphine, where no physical cause was found for the report of increased pain. Thus, even assuming Plaintiff's allegations in the FAC are true, he has not come forward with any evidence showing Dr. Zhang was aware of a substantial risk to his health in providing a non-opioid pain medication regiment and deliberately disregarded that risk. *See Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.") (citations omitted); *Harrington v. Scribner*, 785 F.3d 1299, 1304-05 (9th Cir. 2015) ("[O]bviousness of a risk may be used to prove subjective knowledge.") Rather, Defendant Dr. Zhang has presented evidence that he met with Plaintiff thirteen times after surgery for follow-up consultations regarding pain management, listened to his report of increased pain while being tapered off morphine and after being removed from morphine,

and, despite evidence Plaintiff was diverting his morphine, twice referred him to an outside hospital to determine a possible physical cause for his increased pain prior to moving him to non-opioid pain medication based on his training, experience, and CCHCS guidelines regarding the risks versus benefits of long-term opioid use for non-cancer chronic pain. *See Jett*, 439 F.3d at 1096 (to establish deliberate indifference a plaintiff must show "a purposeful act or failure to respond to [his] pain or possible medical need.")

Third, Plaintiff has not countered the evidence presented that he twice tested negative for opioids and was suspected of cheeking medication on one occasion, that he had a long history of heroin use, that at least two doctors found he exhibited suspicious drug seeking behavior, and that six other doctors refused to reverse Dr. Zhang's decision to discontinue morphine. The evidence that he did not need morphine for his pain or was not taking it but wanted it for some other reason such as diversion to other inmates raised legitimate concerns. *See e.g. United States v. Garrison*, 888 F.3d 1057, 1059 (9th Cir. 2018) ("There is now an epic crisis of deadly opioid abuse and overuse. . . . And in 2017, the Acting Secretary of Health and Human Services declared the national opioid abuse epidemic a public health emergency.")

In sum, the uncontroverted evidence demonstrates that Dr. Zhang was responsive to Plaintiff's reports of pain, met with and evaluated him regarding pain management thirteen times in the seven months after back surgery before removing him from morphine, which Plaintiff was first prescribed just before surgery, and confirmed there was no physical cause of his reported increase in pain as a result of the tapering off of morphine before moving him to non-opioid pain medication in response to suspected diversion and to avoid the negative effects of long-term opioid use. Defendant Dr. Zhang has demonstrated there is no genuine issue of material fact in dispute regarding whether he was deliberately indifferent to Plaintiff's serious medical needs. *See Farmer*, 511 U.S. at 837 (holding that a defendant is deliberately indifferent where he or she knows plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."); *id*. at 839 ("This 'subjective approach' focuses only 'on what a defendant's mental

attitude actually was.'") Plaintiff was consistently evaluated and treated during the time he reported pain resulting from back surgery and has come forward with no evidence that Dr. Zhang knew of and deliberately disregarded a serious medical need for a different course of medication. *Jett*, 439 F.3d at 1096 (to establish deliberate indifference a plaintiff must show "a purposeful act or failure to respond to [his] pain or possible medical need."); *Estelle*, 429 U.S. at 104 (deliberate indifference to prisoner's medical needs include the "unnecessary and wanton infliction of pain.") Plaintiff has therefore failed to come forward with "specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 256, or make "a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp*, 477 U.S. at 322.

With respect to Nurse Sousley, Plaintiff alleges in his unverified FAC that he told her he was in serious pain since his morphine prescription was discontinued, to which she responded "even if I came in with a broken arm complaining that [a] doctor put me on [an] ineffective course of treatment, Sousley cant [sic] do nothing." (ECF No. 6 at 7.) Nurse Sousley states in her declaration that her ability to change Plaintiff's prescription is limited to making a recommendation to his treating physician, Dr. Zhang, which she did to change his afternoon Lyrica dose to bedtime in response to Plaintiff's report of an inability to sleep due to pain. Plaintiff claims he told Nurse Sousley that because she is a nurse she could "recommend emergency or urgent intervention so another doctor or someone that can modify [my] course of treatment to intervene," but Nurse Sousley responded "[she] could but wasn't going to, and for me to suffer till I [was] seen next time [by] Dr. Zhang and see what he says." (*Id*.) Plaintiff's allegations in the FAC are not sufficient to counter Nurse Sousley's evidence. *See Anderson*, 477 U.S. at 248 ("[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.") (internal quote marks omitted). In any case, even if Plaintiff could come forward with evidence that Nurse Sousley could have or should have referred him to another doctor with a recommendation that he be placed back on morphine or have his pain medication

altered in any way, evidence in the record shows Plaintiff was thereafter seen by six different doctors who all refused to reverse Dr. Zhang's medical decision. Defendant Nurse Sousley has demonstrated there is no genuine issue of material fact in dispute regarding whether she was deliberately indifferent to Plaintiff's serious medical needs. *See Farmer*, 511 U.S. at 837 (holding that a defendant is deliberately indifferent where he or she knows plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."); *id*. at 839 ("This 'subjective approach' focuses only 'on what a defendant's mental attitude actually was.'"); *Jett*, 439 F.3d at 1096 (to establish deliberate indifference a plaintiff must show "a purposeful act or failure to respond to [his] pain or possible medical need.") Plaintiff has failed to come forward with "specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 256, or make "a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp*, 477 U.S. at 322.

Viewing the undisputed evidence in the light most favorable to Plaintiff, the Court finds that both Defendants are entitled to summary judgment on the basis that there is no genuine issue in dispute that they knew of and deliberately disregarded a serious risk to Plaintiff's health. The Court therefore does not address Defendants' contention they are entitled to qualified immunity because they did not violate a clearly established constitutional right in replacing Plaintiff's morphine prescription with non-opioid pain medication. (*See* ECF No. 18 at 18–21.)

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## V.   Conclusion and Order

Based on the foregoing, **IT IS ORDERED** that Defendant's Motion for summary judgment (ECF No. 18) is **GRANTED**.  The Clerk of Court shall enter judgment in favor of Defendant Dr. R. Zhang and Defendant Nurse M. Sousley and close the file.

**IT IS SO ORDERED.**

Dated:  October 25, 2021

_____
Honorable Todd W. Robinson
United States District Court